UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

Plaintiff

V                          8:18-cr-31-WFJ-SPF

HECTOR RUIZ-ANGULO

Defendant

JUN 28 2024 am11:29
FILED - USDC - FLMD - TPA

MOTION FOR RETROACTIVE APPLICATION OF
AMENDMENT 821 TO THE SENTENCING GUIDELINES

ADMINISTRATIVE ORDER

Comes Now, defendant  Hector Ruiz-Angulo        Pro-se ALLEGES
and respectfully states and prays:

1) ON APRIL 27, 2023 the sentencing commission voted to Promulgate
amendment 821 to the sentencing guideline. in Part, this amendment
alters the application of the guidelines with respect to certain offenders
who (a) earned criminal history "status points" based on commission of
an offense while serving a criminal Justice sentence, or (b) presented
zero criminal history Points at the time of sentencing this amendment
took effect on November 1, 2023.

2.) Specifically, with regard to "status points" under USSG 4A1.1 a defendant who committed the instant offense "while under any criminal Justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status," previously received two additional criminal history points. Amendment 821 amends section 4A1.1 to: (1) eliminate such status points for any defendant who otherwise has six or fewer criminal history points; and (2) apply one point, instead of two, for defendant who otherwise present seven or more criminal points.

3.) Who regard to "zero point offenders," the commission's amendment adds a new section 4C1.1 which reduces by two offense levels the guidelines range for defendants with zero criminal history points. The two level reduction however, is not available under this provision to a defendant if one of the nine exceptions stated in the new guidelines applies.

4.) On August 24, 2023, the commission voted to give retroactive effect to these two changes, as of november 1, 2023, subject to disapproval by congress in order to permit the orderly disposition of what is expected to be a substantial volume of motions for sentence reduction (possibly in the terms of thousands nation wide) the commission decreed that while inmates will be able to file motions beginning on november 1, 2023 under 18 U.S.C 3582 (c)(2) seeking a reduction based on the retroactive amendment, an individual whose request is granted by the court may be released from prison no earlier than february 1, 2024.

5.) The court is advised that, to facilitate the orderly review of motions for sentence reduction in this district, and aid Judicial efficiency

the united states attorney's office for this district (USAO) the federal community Defender office for this district (the "federal Defender") and the probation office for this district intend to create a committee (the committee") to review the files of defendants, organized by release date, who may be eligible for a sentence reduction, starting with those defendants who may be released on February 1, 2024 the plan of the USAo and the federal Defender is to determine whether there is agreement that a defendant is eligible for a sentence reduction and such a reduction is appropriate and if so submit a proposed order to this effect thus significantly reducing the number of motions requiring further litigation.

6) The court approves this plan, which has been employed effectively by these parties to address the application of previous retroactive guideline amendments of wide impact.

7) to promote the parties plan, this court, pursuant to 18 USC 3006 A appoints the federal Defender to represent all inmates potentially eligible for sentence reduction under amendment 821 to the sentencing guideline for the limited purpose of screening cases, assesing eligibility for relief, and notifying the defendants or their counsel of the status of their cases.

8) the clerk's office is authorized to provide to the federal Defender or assigned defense counsel and the (USAo), upon request, electronic access to any additional documents from a defendant's case file that are not otherwise available trough public access to court

Electronic records (Pacer) service to determine the defendant's eligibility and any conflicts; Provide, however, that sealed documents will only be made accessible pursuant to court order specifically, the clerk's office may disclose USSG 5K1.1 motions and orders, motion and orders related to previous sentence reduction motion (under Fed. R crim. P. 35 18 U.S.C 3582(c) section 404 of the First step Act, or any other Provision) charging documents, notices of enhancement under USC 851, transcripts available pursuant Judicial conference policy, verdicts, and motion under 28 US C 2255 the federal defender may not distribute such documents except to subsequently appointed or retained counsel may not further distribute such documents, unless otherwise ordered by the court.

9) congress enacted the First step Act of 2018 against the backdrop the First step Act authorized district courts to reduce the prison sentences of defendants convicted of certain offenses. the act allows a district court adjudicating a motion under the First step act may consider other intervening changes of fact (such as changes to the sentencing guidelines) (such as behavior in prison) in adjudicating a First step act motion.

10) the defendant become eligible to have a sentence reduction because the President of the united states of america Donald trump signed the First step Act law retroactive on 2018, when congress passed the First step Act, the First step act authorized district courts to "impose a reduced sentence" for qualifying movants "as if section

2 and 3 of the fair sentencing Act... were in effect at the time the covered offense was committed." Pub L. 115-391, 404 (b) statt 5222 united states V concepcion 142 s.ct 2389; 213 L Ed 731; 2022 supreme court, Dean V united states 581 U.S 62,66, 137 s ct 1170 197 L Ed 2d 490 supreme court Koon V united states 518 U S 81, 113,116, s.ct 2035,135 L Ed 2d 392 supreme court, united states V Tuckler 404 U.S. 443,446 pp 6-8, 92, s ct 589, 30 L Ed 2d 592 supreme court, also it is very respectfully requested that this honorable court precent the reasonableness of the sentence imposed under united states V Booker, 548 US, 220,125 s. ct 738,160 L Ed 2d 621 (2005).

ii) SAFETY VAIVE STATUTE
(amendment 738); November 1, 2018 (amendment 811); November 1, 2023 (amendment 821 and 824)

5 c1.2 Limitation on applicability of statutory minimum sentences in certain cases.

7050b the court shall impose a sentence in accordance with the applica-ble guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meet the criteria in 18 USC 3553 (F)(1).

(b) in the case of a defendant (1) who meets the criteria setforth in subsec-tion (a); and (2) for whom the statutory required minimum sentence is at least five years, the applicable guideline range shall not be less than 24 to 30 months of imprisonment.

therefore the united states sentencing commission guidelines of 2018 recomend such amendments to be applied to defendant's sentencing guidelines to lower the term of imprisonment, there is some applicable factors of the sentencing guidelines like such amendments and adjustment and homuch points it shall decrease, like mentioned below.

1) effective 1,2007 (amendment 711)
   2D1.1 3 or 2 level shall decrease
2) effective November 1,2023 (amendment 821 and 824)
   (2) Level shall decrease pursuant USSG 5C1.2
3) effective November 1,1983 (amendment 500) mitigating role 3B1.2
   3 level decrease in cases falling between (a) and (b)
   4 level decrease if the defendant was a minimal participant
4) effective November 1,2018 (amendment 808) 3E1.1 Acceptance of responsib
   3 level decrease pursuant 3E1.1 acceptance of responsibility
5) downward departure:
   2 level shall decrease
6) effective November 1,2023 (amendment 821)
   2 level shall decrease, citing united states V RAFAEL ALMEIDA-MARTINEZ (1st 2012)

So based on all the adjusment and level that shall decrease the defendant sententcing range shall decrease from level 40-292-365 to level (25) 57-71 months of imprisonment trough all the applicable

factors that the sentencing commission guidelines of the united states and without the adjustment of the (amendment 500) 3b1.2 mitigating role the defendant sentencing guideline range shall be adjusted from level (40) - 3̶9̶4̶ 292 - 365 to level (27) 7087 month's

The defendant since date 2018    has be of good behavior, din not commit any diciplinary infractions, never refused to participate in any programing, and participated in what programing was available to him, the defendant has also maintained a low/minimum risk for the duration of his federal confinement.

amendment 821 modify USSG 4c1.1 to provide a two-level downward amendment 821 enter to be effective on November 1, 2023, and it is also for defendants who was sentenced before November 1, 2023 based on the amendment 821 the defendant sentencing guideline shall change to lower the term of imprisonment imposed there is some conditions for the amendment 821 likely (a) the zero-point change in the new guidelines (New USSG 4c1.1) says that defendants are eligible for a 2-level reduction in their total offense level if they had zero criminal history points and meet all the following conditions:

PART B (ZERO-Point offenders)

Sub Part (1) (adjustment for certain zero-Point offenders)

Chapter four is amended by inserting at the end the following new part C:

4C1.1 Part C - adjusment for certain zero-point offenders

(a) adjusment - if the defendant meets all of the following criteria

1) the defendant did not receive any criminal history points from chapter four, Part A;

2) the defendant did not receive an adjusment under 3A1.4 (terrorism

3) the defendant did not use violence or credible threats of violence in connection with the offense.

4) the offense did not result in death or serious bodily injury;

5) the offense is not a sex offense.

6) the defendant did not personally cause substancial hardship.

7) the defendant did not possess, receive, purchase, transport, transfer sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense

8) the instant offense of conviction is not covered by 2H1.1 (offenses involving individual rights)

9) the defendant did not receive an adjusment under 3A1.1 (Hate crime motivation or vulnerable victim) or 3A1.5 (serious human rights offense); and

10) the defendant did not receive an adjusment under 3B1.1 (aggravating role) and was not engaged in a continuing criminal enterprise as defined in 21 U.S.C 848.

RE: Ruiz-Angulo, Hector

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)    ~~BACKGROUND~~

1.  On January 18, 2018, a federal grand jury in the Middle District of Florida, Tampa Division, returned a two-count Indictment naming the below individuals as the defendants:

> Fernando Pineda-Jimenez, a/k/a "Padrino,"
> Rodrigo Pineda-Torres, a/k/a "Gordo,"
> Luis Ernesto Perez-Quevedo, a/k/a "Acuerpado,"
> Yesid Eduardo Torres-Solis, a/k/a "Perro,"
> Adrian Luna-Munoz, a/k/a "Vaca," and
> **Hector Ruiz-Angulo, a/k/a "Maestro,"**

2.  Count One of the Indictment charges that beginning on an unknown date and continuing until on or about the date of this Indictment, the defendants, each of whom will be first brought into the United States at a point in the Middle District of Florida, did knowingly and willfully combine, conspire and agree with each other and with other persons, both known and unknown to the Grand Jury, including persons who were on board a vessel subject to the jurisdiction of the United States and who first entered the United States at a place in the Middle District of Florida, to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, contrary to the provisions of 46 U.S.C. § 70503(a)(1). All in violation of 46 U.S.C. § 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii).

3.  Count Two of the Indictment charges that beginning on an unknown date and continuing until on or about the date of this Indictment, the defendants, who will be first brought into the United States at a point in the Middle District of Florida, did knowingly and willfully combine, conspire and agree with others, both known and unknown to the Grand Jury, to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing, intending, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, contrary to the provisions of 21 U.S.C. § 959. All in violation of 21 U.S.C. §§ 963 and 960(b)(1)(B)(ii) and 18 U.S.C. § 3238.

4.  The Indictment also contains forfeiture provisions pursuant to 46 U.S.C. §70507, 21 U.S.C. §§ 853 and 881(a), and 970, and 28 U.S.C. § 2461(c).

5.  On April 15, 2021, the defendant appeared before United States Magistrate Judge Elizabeth A. Jenkins and pleaded guilty to Count One of the Indictment. On April 30, 2021, United States District Judge James S. Moody, Jr. accepted the defendant's guilty plea and adjudicated him guilty. On June 23, 2021, this case was reassigned to United States District Judge William F. Jung. Sentencing is pending.

6.  Pursuant to a written plea agreement and Rule 11(c)(1)(A), the government agrees to the dismissal of Count Two at the time of sentencing.

The United States Probation Prepared a pretrial services report ("PSI"), which determined that ANGULO had a total offense level of 37, a criminal history category of 1, and an advisory guideline range of 210-262 months, the court sentenced ANGULO to 121 months in Prison, followed by 5 years of supervised release. Since ANGULO was sentenced, the United States sentencing commission issued a sentencing adjustment for certain zero-point offenders, which provides, in relevant Part, for "a decrease of two levels from the offense level ... for offenders who did not receive any criminal history points ... and whose instant offense did not involve specified aggravating factors" courts judgment sentencing him to 121 months in Prison and 5 years of supervised release, moreover ANGULO did not received any aggravating factors See ("PSI")

Paragraphs.

48 Victim related adjustment: NONE  0

49 adjustment for role in the offense: NONE  0

50 adjustment for obstruction of justice: NONE  0

51 adjusted offense level (subtotal): 40

52 chapter four enhancement: NONE  0

53 Acceptance of Responsibility: The defendant has clearly demostrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels USSG 3E1.1(a)  - 2

54 Acceptance of Responsibility: the defendant has assisted

authorities in the investigation or prosecution of the defendant own misconduct by timely notifying authorities of the intention to enter a plea of guilty. accordingly, the offense level is decreased by one additional level. U.S.S.G 3E1.1 (b) -1.

A. ANGULO is entitled to a sentence reduction.

as noted, the retroactive amendment that ANGULO invokes here is amendment 821 - the adjustment for certain zero-point offenders see U.S.S.G 4C1.1. Pursuant to amendment 821 a defendant is eligible for a two-level reduction in his offense level, if he meets all the following criteria:

(1) The defendant did not receive any criminal history points from chapter FOUR, Part A;

(2) the defendant did not receive any adjustment under 3A1.4 (Terrorism)

(3) The defendant did not use violence or credible threats of vidence in connection with the offense;

(4) The offense did not result in death or serious bodily injury

(5) The instant offense of conviction is not a sex offense

(6) The defendant did not personally cause substantial Financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a Firearm or other dangerous weapon (or induce another Participant to do so)

11

In connection with the offense.

(8) The instant offense of conviction is not covered by 2H1.1 (offenses involving individual rights);

(9) The defendant did not receive an adjustment under 3A1.1 (Hate crime motivation or Vulnerable Victim) or 3A1.5 (serious Human rights offense); and

(10) the defendant did not receive an adjustment under 3b1.1 (aggravating role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C 848.

Here, an analysis of ANGULO case reveals that he is eligible for a sentence reduction pursuant to amendment 821. ANGULO qualifies for the adjustment for zero-point offenders because he meets all the criteria set forth above. in addition a reduction in ANGULO sentence in consistent with the applicable policy statements.

Specifically, application of the two-level reduction in sentence result in offense level of 29, with a new guideline range of 87-108 months pursuant to the relevant policy statement, the court cannot reduce ANGULO term of imprisonment below the minimum of the amended guidelines range below 87 months. see U.S.S.G 1b1.10(b)(2)(A); see ALSO Dilon v United States, 560 U.S 817, 826, 130 S. CT 2683, 2691, 177 L Ed 2d 271 (2010) ("The court is also constrained by The commissions

statements dictating by what amount the sentence of Prisoner serving a term of imprisonment ceffected by the amendment may be reduced. "(cleaned up) Thus, as the court initially imposed a sentence of 121 month's, and the bottom of the amended guideline range is 87 month's, the court is able to reduce ANGULO sentence, but only to 87 month's see United States V ZULUAga 11th cir, cr No. 19-20220-cr-scola.

In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the sentencing commission..., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable Policy statements issued by the sentencing commission. 18 U.S.c 3582 (Emphasis added). Thus, under 3582 (c)(2), the court must undertake a two-step process to determine whether a final sentence should be modified based on a sentencing range that hass been lowered by the sentencing commission.

First, the court must determine if a retroactive amendment to the sentencing guidelines indeed lowered a defendants guidelines range and whether a reduction is consistent with the applicable Policy statements. second, the court must consider the 3553 (a) factors to determine if it will exercise its discretion to reduce that defendant's sententence see, United States V ZULUAga 11th cir December 4th, 2023.

13

. . . .

qualifies for relief in two-sub categories for the zero-point offenders adjustment - and the newly amended safety-valve criteria, 18 U.S.C.S 3553(F)(1)-(F)(5) Now retroactively applicable To The maritime Drug Law enforcement Act ("MDLEA") 46 U.S.C.S 70503-70506, ANGULO meets all the criteria of amendment 821, and reducing his sentence is consistent with applicable policy statements and the 18 U.S.C.S 3553(a) Factors.

ANGULO is entitled to SAFETY-VALVE RELIEF UNDER AMENDMENT 821, 1 NOV, 2023

ANGULO was sentenced ON November, 19, 2021 and qualified For safety-valve relief. In December 2018 congress passed The First step Act, which amended Section 3553(F)(1) and relaxed its.

Criminal-History disqualifications, See First step Act of 2018, 132 STAT. AT 5221, AS amended, TITLE 18 U.S.C.S 3553(F) commonly called The "safety-valve" allows A district court to sentence a criminal defendant below the mandatory-minimum sentence for certain Drug offenses IF The defendants meets The criteria in section 3553(F)(1) Through (F)(5) IN 2018, congress amended one of the safety-valve's Provisions: 3553(F)(1), See FiRst step Act of 2018, Pub. L. No 115-391, 402, 132, STAT. 5194, 5221. ANGULO convictions Triggered a mandatory-minimum sentence of five-years imprisonment, See 46 U.S.C.S. 70503-70506 (Boat

14

case) as amended. If sentence Today he would receive a sentence below the five-year mandatory minimum criteria pursuant to the safety-valve, see 18 U.S.C.S 3553(F), which would be part of the district courts requirement to consider any applicable 18 U.S.C.S 3553(A) Factors, see United States V. Erick Lopez, 998 F.3d 431 (9th cir. 2021). Accordingly The Safety-valve allows a district court To sentence a criminal defendant below a mandatory-minimum sentence For Particular Drug offenses if a defendant meets the criteria outlined in section 3553(F)(1) Trough (F)(5), see generally 18 U.S.C.S. 3553(F). ANGULO: met The criteria in recently amended 3553 (F)(1) As amended. Before 2018, section 3553(F)(1) barred any defendant with more than one criminal-History point under The sentencing guidelines From safety-valve relief, see medica-Pimental, 477 F.3d 1100, 1103 (9th cir. 2007) Id At 1104. The law Threshold of more than one criminal-History point resulted in many Drug offenders receiving mandatory-minimum sentences in instances that some in congress believed were unnecessary and Harsh. congress recognized The Problem and sought to give (District courts more flexibility, in December 2018, congress as we know, passed The first step Act, which amended 3553(F)(1) and relaxed its criminal History disqualifications, see First step Act ("FSA") of 2018, 132 STAT AT 5221, as amended 3553(F)(1) ANGULO: meets the safety-valve criteria in section 3553(F) because:

1) The defendant does not Have-

(A) more than 4 Criminal History Points ...;

(B) A Prior 3-Point offense ... and

(C) A Prior 2-Point violence offense ...;

2) The defendant did not use violence or credible threats of violence or possess a firearm or another dangerous weapon ... in connection with [The instant drug] offense:

3) The [instant drug] offense did not result in death or serious bodily injury To any Person

4) The defendant was not an organizer, Leader, manager, or supervisor of others in the [instant drug] offense ... and was not engaged in a continuing Criminal enterprise ... And.

5) [before] The Sentencing Hearing, the defendant Has truthfully provided To the government all information and evidence The defendant Has concerning The [instant drug] offense 18 U.S.C.S 3553 (F)(1)-(5).

THese FIVE (5) Criteria applies for safety-Valve relief from the statutory mandatory minimum under 18 U.S.C.S 3553(F)


See CH. 1 Pt A 1, 2 3

**Ch. 1 Pt. A 𝓛**

The Commentary to §5C1.2 captioned "Background" is amended by inserting after "Violent Crime Control and Law Enforcement Act of 1994" the following: "and subsequently amended".

**Reason for Amendment:** This two-part amendment revises §5C1.2 (Limitation on Applica- bility of Statutory Minimum Sentences in Certain Cases) and subsections (a)(1) and (a)(3) of §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) in response to the **First Step Act** of 2018, Pub. L. 115–391 (Dec. 21, 2018) ("**First Step Act**"). The **First Step Act** amended the eligibility criteria of the "safety valve" provision at 18 U.S.C. § 3553(f) and the enhanced penalty provisions for certain drug trafficking defendants at 21 U.S.C. §§ 841(b) and 960(b). The amendment primarily revises §5C1.2 to conform it to the statutory safety valve, as amended by the **First Step Act**. In addition, the amendment revises subsections (a)(1) and (a)(3) of §2D1.1 to make the guideline's reference to the type of prior offenses that trigger enhanced mandatory minimum penalties consistent with the amended statutory provisions.

> **First,** the amendment makes three changes to §5C1.2 and its corresponding commentary to reflect the statutory changes to section 3553(f) made by the **First Step Act**. The **First Step Act** expanded the safety valve provision at section 3553(f) by extending its applicability to defend- ants convicted of maritime offenses (46 U.S.C. §§ 70503 and 70506) and broadening the crim- inal history eligibility criteria to include defendants who do not have: (1) "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as deter- mined under the sentencing guidelines"; (2) a "prior 3-point offense, as determined under the sentencing guidelines"; and (3) a "prior 2-point violent offense, as determined under the sen- tencing guidelines." The amendment revises §5C1.2(a) to include maritime offenses and the expanded statutory criminal history criteria. Next, it revises Application Note 1 to incorporate the statutory definition for the term "violent offense." Finally, it revises Application Note 7 to reflect the new statutory limitation that information disclosed by a defendant pursuant to

> 18 U.S.C. § 3553(f) "may not be used to enhance the defendant's sentence unless the infor- mation relates to a violent offense."

> **Second,** the amendment revises §5C1.2(b) to account for the expanded class of defendants who qualify for safety valve relief. Section 5C1.2(b) implemented Congress's directive requiring that the guideline minimum be at least 24 months for defendants whose statutorily required minimum sentence was at least five years by providing a minimum offense level of 17 for such offenders. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103–222,

§ 80001(b), 108 Stat. 1796, 1985 (1994) ("In the case of a defendant for whom the statutorily required minimum sentence is 5 years, such guidelines and amendments to guidelines . . . shall call for a guideline range in which the lowest term of imprisonment is at least 24 months."); *see also* USSG App. C, amend. 624 (effective Nov. 1, 2001) (adding §5C1.2(b) "in order to comply more strictly with the directive"). Before the **First Step Act**, only defendants in Criminal History Category (CHC) I (with no more than one criminal history point) could qualify for safety valve relief, and a base offense level of 17 therefore correlated with a guide- line range of 24 to 30 months for all safety-valve-eligible

Ch. 1 Pt. A ↰

defendants. After the **First Step Act**, a safety-valve-eligible defendant can be in any CHC, and an offense level of 17 correlates with the following guideline ranges at each category: I (24–30 months); II (27–33); III (30–37); IV (37–46); V (46–57); and VI (51–63). Because Congress's directive is tied to the existence of a 5-year mandatory minimum penalty and not to the defendant's CHC, the amendment re- places the offense-level floor with a guideline-range floor. The Commission determined that the proportionality concerns raised in public comment and testimony are addressed by the operation of the Sentencing Table, irrespective of the offense-level floor.

Third, the amendment makes conforming changes to §4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)), which references the number of criminal history points permitted under §5C1.2(a)(1).

Fourth, the amendment makes only non-substantive changes to §2D1.1(b)(18) and

§2D1.11(b)(6), the 2-level reductions that are tethered to the eligibility criteria of para- graphs (1)–(5) of §5C1.2(a). The 2-level reductions in §2D1.1 and §2D1.11 apply to any defend- ant who meets the revised criteria of §5C1.2.

Finally, the amendment revises subsections (a)(1) and (a)(3) of §2D1.1 to replace the term "similar offense" with the appropriate terms set forth in the relevant statutory provisions, as amended by the **First Step Act**.

The penalty provisions at 21 U.S.C. §§ 841(b) and 960(b) provide enhanced mandatory mini- mum penalties for defendants (1) whose instant offense resulted in death or serious bodily injury or (2) who have prior convictions for certain specified offenses. Penalties are further increased if death and serious bodily injury occurred as a result of the instant offense *and* the defendant has a qualifying prior conviction. Prior to the **First Step Act**, all of the recidivist penalty provisions within sections 841(b) and 960(b) provided for an enhanced mandatory min- imum penalty if a defendant had one or more convictions for a prior "felony drug offense," as defined in 21 U.S.C. § 802(44). The **First Step Act** both narrowed and expanded the type of prior offenses that trigger enhanced mandatory minimum penalties under 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), 960(b)(1), and 960(b)(2) by replacing the term "felony drug of- fense" with "serious drug felony," as defined in 21 U.S.C. § 802(57), and adding "serious violent felony" offenses, as defined in 21 U.S.C. § 802(58). The **First Step Act** did not amend 21 U.S.C. §§ 841(b)(1)(C), 841(b)(1)(E), 960(b)(3), or 960(b)(5), which still provide for enhanced manda- tory minimum penalties if a defendant was convicted of a prior "felony drug offense."

The enhanced statutory penalty structure is accounted for through heightened alternative base offense levels (BOL) at §2D1.1(a)(1)–(a)(4). Prior to the amendment, §2D1.1(a)(1) pro- vided for a BOL of 43 "if the defendant is convicted under [any of six enumerated subsections], and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions *for a similar offense*." Subsection 2D1.1(a)(3) is identical to §2D1.1(a)(1), except that it provides a BOL of 30 and applies if the defendant is convicted

**Ch. 1 Pt. A 3**

of an offense involving a Schedule III controlled substance under 21 U.S.C. § 841(b)(1)(E) or 21 U.S.C. § 960(b)(5).

The <u>**First Step Act**</u> amended four of the six penalty provisions referenced in §2D1.1(a)(1) and, for those amended provisions, the term "similar offense" is over-inclusive, because it includes drug offenses that do not meet the definition of "serious drug felony," and under-inclusive, because it fails to account for a prior "serious violent felony." The amendment divides §2D1.1(a)(1) into two subparagraphs, (A) and (B). Subparagraph (A), which references the four statutory provisions amended by the <u>**First Step Act**</u>, replaces the term "similar offense" with "serious drug felony or serious violent felony." Subparagraph (B), which references the two provisions that were not amended, replaces the term "similar offense" with "felony drug of- fense." The amendment also amends §2D1.1(a)(3), by replacing the term "similar offense" with "felony drug offense," for consistency with the terminology used in §2D1.1(a)(1).

# LEGAL STANDARD

Criminal law & procedure 7 sentencing 7 corrections, modifications & reductions 7 court's authority.

Criminal law & procedure 7 sentencing 7 corrections & modifications Based on amended sentencing ranges.

Congress has imposed express statutory limitations on one type of sentencing modification proceeding. 18 U.S.C.S 3582 (c)(2) provides that in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the united states sentencing comm ission the court may reduce the term of imprisonment, after considering the factors set forth in 18 U.S.C.S 3553 (a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the sentencing comm- ission. For those proceedings, congress expressly cabined district court's discretion by requiring courts to abide by the sentencing commission's policy statements.

Criminal law and procedure 7 sentencing 7 corrections, modifications and reductions 7 court's authority

Criminal law and Procedure 7 sentencing 7 corrections, modifications and reductions 7 Eligibility, circumstances and factors.

The text of the first step act of 2018 does not so much as hint that district courts are prohibited from considering evidence of rehabi

litation, diciplinary infractions, or unrelated united states sentencing Guidelines changes. the only two limitations on district courts' discretion appear in 802: A district court may not consider a first step act motion if the movant's sentence was already reduced under the first step act or if the court considered and rejected a motion under the first step act. By its terms, 802 does not prohibit district courts from considering any arguments in favor of, or against sentence modification. in fact 802 only underscores that a district court is not required to modify a sentence for any reason Drawing meaning from silence is particularly inappropriate in the sentencing context, for congress has shown that it knows how to direct sentencing practices in express terms.

b) congress in the first step act did not contravene well-established sentencing practices.

(1) nothing in the text and structure of the first step act expressly or even implicitly, overcomes the established tradition of district courts sentencing discretion. the text of the first step act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes. the only two limitations on district court's discretion appear in 802, a district court may not consider a first step act motion if the movant's sentence was already reduced under the first step act or if the court considered and rejected a motion under the first

step Act. Neither limitation applies here. By its terms, 802 does not prohibit district courts from considering any arguments in favor of or against, sentence modification, in fact 802 only underscores that a district court is not required to modify a sentence for any reason "Drawing meaning from silence is particularly inappropriate" in the sentencing context, "for congress has shown that it knows how to direct sentencing practices in express terms." Kimbrough V. United States, 552 U.S. 85, 103, 128 S. ct 558, 169 L. Ed. 2d 481.

the "as if" clause in 802 does not impose any limit on the information a district court can consider in exercising its discretion under the first step Act. The term "as if" simply enacts the first step Act's central goal: to make retroactive the changes in the first step Act, necessary to overcome 1 U.S.c 109, which creates a presumtion that congress does not repeal federal criminal penalties unless it say so "expressly." the "as if" clause also directs district courts to apply the first step Act as if it applied at the time of the commission of the offense, not at the time of the original sentencing, suggesting that congress did not intend to constrain district courts to considering only the original sentencing record. thus, the "as if" clause requires district courts to apply the legal changes in the first step Act when recalculating a movant's Guidelines but it does not limit the information a district court may use to inform its decision whether and how much to reduce a sentence.

consistent with this text and structure, district courts deciding First Step Act motions regularly have considered evidence of post-sentencing rehabilitation and unrelated Guidelines amendments when raised by the parties. Those records are naturally of interest to judges authorized by the First Step Act to reduce prison sentences or even to release movants immediately. Likewise, when deciding whether to grant First Step Act motions and in deciding how much to reduce sentences, courts have looked to postsentencing evidence of violence or prison infractions as probative. Moreover, when raised by the parties, district courts have considered nonretroactive Guidelines amendments to help inform whether to reduce sentences at all, and if so, by how much. Nothing express or implicit in the First Step Act suggests that those courts misinterpreted the Act in considering such relevant and probative information. See United States v Li, 206 F.3d 78, 89 (1st cir).

defendant states that the court of appeals for the first circuit decision in United States v Douglas, 644 F.3d 39 (1st cir 2011) is helpfull.

where district courts may calculate new Guidelines ranges as part of resentencing proceedings, courts have also considered unrelated Guidelines changes in their discretion. See, e.g., United States v. Frates, 213 L.Ed.2d 746, 896 F.3d 93, 101-102 (CA1 2018) (distinguishing

between recalculating a Guidelines range based on nonretroactive intervening changes of law and considering those changes as matter of "discretion to select an appropriate sentence") United States v Taylor, 648 F. 3d 417, 425 (CA6 2011) ("[T]he district court can consider subsequent amendments to the Guidelines for purposes of fashioning an appropriate sentence [at resentencing]") united states v Gilmore, 599 F. 3d 160, 166-167 (CA2 2010) (considering subsequently updated Guidelines as "evidence of society's judgment of the seriousness of the movants offense") In many cases, a district court is prohibited from recalculating a Guidelines range in light of nonretroactive Guidelines amendments, but the court may find those amendments to be germane when deciding whether to modify a sentence at all, and if so, to what extent.

The only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by congress in a statute or by the constitution. see pepper, 562 u.s., at 489, n. 8 ("of course, sentencing courts' discretion is subject to constitutional constraints"); Mistretta v united states, 488 u.s. 361, 364, 109 s. ct. 647, 102 L. Ed. 2d 714 (1989) ("[T]he scope of Judicial discretion with respect to a sentence is subject to congressional control").

Congress is not shy about placing such limits where it deems them appropriate at an initial sentencing, congress has provided generally that "[n]o limitation shall be placed on the information concerning the background character, and conduct of a person convicted of an offense" when deciding what sentence to impose 18 USC 3661. Congress has, however, expressly prohibited a district court in crafting an initial sentence from considering a defendant's need for rehabilitation in support of a prison sentence. 3582(a); TAPia v United States 564 U.S. 319, 328 131 S. CT 2382, 180 L. Ed. 2d 357 (2011).

In other aspects of sentencing, congress also has expressly limited district courts to considering only certain factors. for example, in determining whether to include a term of supervised release, and the length of any such term, congress has expressly precluded district courts from considering the need for retribution. see 3583(c)

Congress has further imposed express statutory limitations on one type of sentencing modication proceeding. section 3582(c)(2) provides that.

In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the sentencing commission... the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the sentencing commission,

defendant now respectfully request the district court to schedule a new sentencing hearing, order a new presentence report and resentence him as allowed by section 3582(c)(2), and apply United states v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005), in his resentencing, because:

APPLying Booker is in accord with the requirement that courts apply the current version of the sentencing guidelines in effect on the date of resentencing.

It is well settled that absent an ex post facto problem, the district court must apply the version of the sentencing guidelines in effect on the date of the resentencing, see e.g., United states v. MATEO-ESPEJO, 426 F.3d 508, 510 Note 1 (1st cir. 2005) citing united states v. Harotunian, 920 F.2d 1040, 1041-42 (5th cir. 2009). This echoes the policy statement in the guidelines manual, that "[T]he court shall use the guidelines manual in effect on the date that the defendant is sentenced [,] unless doing so would be violative of the ex post facto clause, see u.s.s.g. 1B1.11(a) and (B)(2). Here, Booker's advisory regime will be the "version of the sentencing guidelines in effect" on the date of defendant's resentencing, because these guidelines will necessarily include judicial interpretations by the supreme court, or the "constitution requirement that creates fundamental change" to the legal framework in question; a requirement of such magnitude that it

rendered the guidelines advisory only, 543 U.S. at 248.

Thus, an imposition of a guidelines' sentence, here without applying their newly advisory role, would be violative of the established Principle that the guidelines as they exist at the time of resentencing is the version to be applied, Booker applies to 3582 (c)(2) resentencing

## 1 APPLICABLE PROCEDURES TO CONSIDER

Defendant is eligible for a sentence modification. Thus, the court may consider reducing the defendant's term of imprisonment. The november 1, 2023 amendment to U.S.S.G 1B1.10 clarifies the extent of the reduction, see U.S.S.G 1B1.10, App. Note (2) and (3). Under amendment 821, a reduction in a term of imprisonment is no longer restrictive. amendment 821 now responds to the first step Act of 2018 and the First Step Act now allows district court to consider intervening changes of law or fact in exercising their discretion to reduce a sentence. (a) Federal courts historically have exercised broad discretion to consider All relevant information at an initial sentencing hearing, consistent with their responsability to sentence the whole Person before them. That discretion also carries forward to Later proceedings that may modify an original sentence. District court's discretion is bounded only when congress or the constitution expressly

27

Limits the type of information a district court may consider in modifying a sentence. 1) There is a long "Long Tradition that sentencing Judges enjoy broad discretion in the sort of information they may consider" at an initial sentencing Proceedings, see Dean V. United States, 581 U.S. 62, 66, 137 S.Ct. 1190, 197 L.Ed. 2d 490. that unbroken tradition also characterizes federal sentencing history. Indeed, "It has been uniformly and constant in the federal Judicial tradition for the sentencing Judges to consider every convicted Person as an idividual, and case as unique Study in the human failing that sometimes mitigate, sometimes magnify the crime, and the punishment to ensue", see Koons V. United States, 518 U.S 81, 113, 116 S.Ct. 2035, 135 L.Ed. 2d 392.

Accordingly, a federal Judge, in deciding to impose a sentence, "may approately conduct an inquiry, broad in scope, largely unlimited either to the kind of information he or she may consider, or the source from which it may come" see United States V Tucker, 404 u.s. 443, 92 S.Ct. 589, 30 L.Ed. 2d 592. (2) The discretion federal Judges hold at an initial sentencing also characterizes sentencing modifications hearing. For example, the court in Pepper v. United States, 562 U.S 476, 131 S.Ct 1229, 179 L.Ed. 2d 196, found it "clear that when a defendants sentence has been set aside on appeal and his case remanded for resentencing a district court may consider evidence of a defendant's rehabilitation since his Prior sentencing", Id. accordingly, federal courts resentencing individuals whose sentences were vacated on appeal regularly

consider evidence of rehabilitation, or evidence of rule breaking in prison, developed after the initial sentencing, where district court must calculate new guidelines range as par of resentencing proceedings, court have also exercised their discretion to consider non-retroactive guidelines changes. In some cases a district court is prohibited from recalculating a guideline to account for non-retroactive guideline amendments, but the court may nevertheless fine those amendments to be germaine when deciding whether to modify a sentence at all, and if so to what extent "Id, at 3582(c)(2). (3) The only limitation on a court's discretion to consider relevant materials at an initial sentencing, or in modifying that sentence, are those set-forth by congress in a statute or by the constitution, see PEPPER 562 U.S at 489 n.8; Mistreta V. United states, 488 U.S. 361, 364, 109 S.ct 647, 102 L.Ed. 2d 174. congress has placed such limits where it deems them approPiate, see U.S.S. 3582(a); 3583(c).

defendant's argues that, when his sentence became final, the sentencing commission issued amendment 821 (2023) which amended section 3553(F)(1)(18 USCS) and reduced the base offense level for those with zero-criminal history points to move for a two point reduction of sentence. the amendment also gave a district courts broad discretion to apply the safety-valve, to those who satisfy the eligible criteria outlined in section 3553(F)(1)-(F)(5), see U. S.S.G. APP. C. amdt. 821 (SUPP. NOV, 2023-2024) to depart below the mandatory minimum in maritime cases such as petitioner's and because amendment 821 applies retroactively, it makes him potentialy eligible for a sentence reduction.

So since the defendant falls, within all the requested conditions by Part( ) of the amendment 821 the defendant is eligible and qualified for the two-level reduction, amendment 821 become retroactive on February 1, 2024 see united states V BRAINI DAVISON FELIZ 11th cir 2024. case No. 21-20171-CR-MARTINEZ. Also see united states V. Zuluaga 11th cir case No. 19-20220-CR-scala. under the retroactive application of the first step Act, under united states V Booker, and also amendment 821 the defendant new sentencing guideline range Shall change from Level (32) 121-151 to Level (29) 87-108 months of imprisonment.

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." united states V. Phillips, 597 F. 3d 1190, 1194-95 (11th cir. 2020); see also 18 U.S.C 3582(c) section 3582(c)(2) provides:

[1]In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the sentencing commission ... the court may reduce the term of imprisonment, after consulting the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the sentencing commission.

Petitioner Hector Ruiz-ANGULO acting in the capacity of Pro-se Litigant, respectfully files this motion for a reduction in sentence under retroactive sentencing guidelines amendment 821 Petitioner qualifies for relief in two-sub-categories, for the zero-point offenders adjustment, and the newly amended SAFETY-VALVE criteria, with 18 U.S.C.S 3553(F)(1)-(F)(5) now retroactively applicable to the Maritime Drug Law Enforcement Act (MDLEA) 46 U.S.C.S 70503-70506. Petitioner meets all the amendment 821 criteria, and reducing his sentence is consistent with applicable Policy statements and the 18 U.S.C.S. 3553(a) factors.

Wherefore Petitioner request that this court modify his sentence pursuant to the zero-point offenders amendment and under the safety-VALVE criteria And the first step Act of 2018

Respectfully submitted in the federal correctional institution Oakdale II Louisiana Today 06-24-2024.

HECTOR RUIZ ANGULO

HECTOR ANGULO RUIZ

Reg# 73690-018